**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.:

SURGERY CENTER OF VIERA, LLC,

     *Plaintiff*,

vs.

CIGNA HEALTH AND LIFE INSURANCE
COMPANY,

     *Defendant*.

_____/

**COMPLAINT**

Plaintiff, Surgery Center of Viera, LLC ("SCV"), as authorized representative, assignee, and / or medical provider of patient / insured J.R., sues Defendant, Cigna Health and Life Insurance Company ("Cigna"), as follows:

**NATURE OF THE ACTION, PARTIES,**
**JURISDICTION, AND VENUE**

1.    This action arises (and sounds in diversity jurisdiction, as discussed below) under Florida state law for Defendant's underpayment of the health insurance benefits / medical services monies owed to the medical provider (SCV) for medical services rendered by SCV to the plan participant / patient / insured, J.R., on January 13, 2016, and February 15, 2018, and for Defendant's failure to produce germane documentation / information that was / is owed under the insurance contract.[1]

---

[1] Because of the germane records production failure (Count I) SCV is somewhat in the evidentiary dark as to Counts II-VIII and accordingly reserves the right to amend this Complaint to expound on Counts II-VIII related

2.      At all material times, SCV was a medical provider and a Florida limited liability company with its citizenship (*i.e.*, principal place of business / "nerve center") in Viera, Florida, Brevard County. SCV is *sui juris* in all respects. SCV's members are as follows: (a) Dr. Ara Deukmedjian, domiciled in Brevard County, Florida, (b) Sun Deukmedjian, domiciled in Brevard County, Florida, and (c) Dr. Bharat Patel, domiciled in Brevard County, Florida. At all material times, SCV was the authorized representative of J.R. with an assignment of benefits as well.

3.      At all material times, Cigna was an insurance company incorporated in the State of Connecticut with its principal place of business / headquarters (*i.e.,* "nerve center") in the State of Connecticut and engaged in the business of selling insurance, administering insurance, and / or deciding and paying insurance claims throughout the State of Florida.

4.      This Court possesses original jurisdiction pursuant to Title 28, United States Code, Section 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of attorney's fees, costs, and / or interest.

5.      Venue is proper in the Middle District Court of Florida pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) a substantial part of the events or omissions giving rise to the subject action occurred in this jurisdiction, namely the subject medical procedures unfolded in this jurisdiction, Defendant's underpayment of the subject insurance claims both at the initial claims and subsequent pre-suit appeals stages unfolded in this jurisdiction, and Defendant's refusal to supply germane documentation /

---

allegations (if needed) once SCV is placed on a somewhat level evidentiary playing field *via* Defendant's production of the long-withheld contractually owed documentation / information that related to, in whole or in part, the carrier's claim and appeals decision-making.

information required by the insurance policy (and also Florida Statute, for that matter) unfolded in this jurisdiction, and (b) the Orlando Division of this Court has personal jurisdiction (due to Defendant's minimum contacts in this forum).

6.    All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

## COMMON ALLEGATIONS

7.    At all material times, J.R. was covered by the plan as evidenced by Defendant's partial payment of the subject claims. Upon information and belief, the Plan Group number was / is 3338004 and the member ID number was / is U19129482 01.[2]

8.    At all material times leading up to the subject medical services received from SCV, J.R. suffered from chronic and debilitating back pain and associated radiculopathy.

9.    On January 13, 2016, SCV operated on J.R. to remedy J.R.'s medical condition (the "2016 Procedure").

10.    On February 15, 2018, SCV again operated on J.R. to remedy J.R.'s medical condition stemming from a prior fusion (the "2018 Procedure").

11.    SCV's billed charges for the 2016 Procedure rendered to J.R. totaled to $160,842.00, and a claim package was submitted to Cigna relating the same.

12.    SCV's billed charges for the 2018 Procedure rendered to J.R. totaled to $285,353.00, and a claim package was submitted to Cigna relating the same.

13.    The SPD defines "Maximum Reimbursable Charge," in pertinent part, as follows:

---

[2] A copy of the Summary Plan Description ("SPD") is attached hereto at **Exhibit A**.

> The Maximum Reimbursable Charge for covered services is determined based on the lesser of:
>
> - the provider's normal charge for a similar service or supply; or
> - a policyholder-selected percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by Cigna.
>
> ***
>
> … Additional information about how Cigna determines The Maximum Reimbursable Charge or for help determining the Maximum Reimbursable Charge for a specified service is available upon request … .

Ex. A at 60.

14.    At all material times, Cigna was in agreement with Preferred Medical Claim Solutions ("PMCS") (as Cigna's affiliate and / or subcontractor) to secure discounted rates from providers (like SCV), which were secured here in relation to SCV.[3]  This is the kind of "database" referenced in the above SPD definition of "Maximum Reimbursable Charge."

15.    The governing PMCS allowed amount / re-pricing contract (*see* Ex. B) was in full force and effect and was a legally valid and binding contract that established / developed (a) an allowed amount re-pricing rate of 80% of SCV's billed charges less patient responsibilities (*e.g.*, co-pay, deductible, co-insurance) subject to the patient's annual out-of-pocket maximum, and (b) a 100% reimbursement rate for hard costs (*e.g.*, prosthetics / implants).

16.    Following the 2016 Procedure, Cigna issued payment to SCV totaling $12,834.54 for that operation, thereby underpaying the claim.

17.    Following the 2018 Procedure, Cigna issued payment to SCV totaling

---

[3]A copy of the pertinent pages of the governing PMCS re-pricing contract with SCV that was procured on Cigna's behalf (along with the PMCS "client" list listing Cigna) are attached hereto as **Exhibit B** and incorporated herein.

$44,221.41 for that operation, thereby underpaying the claim.

18.    Again, this is not a coverage dispute (*i.e.*, "right of payment" dispute) because Defendant properly conceded coverage *via* the $12,834.54 and $44,221.41 partial claims payments and by not listing any medical judgment related basis for partial payment of the claims in the EOBs. Rather, this is a damages dispute (*i.e.*, "rate of payment" dispute) pertaining solely to the underpayment of the claims (and also the non-coverage issue that is Cigna's failure to produce germane materials promised by the insurance contract).

19.    Following Cigna's underpayments referenced in paragraph 16 and 17 above, SCV asked Cigna to re-process the claims to tender an appropriate amount of benefits / medical services monies.

20.    By letter dated November 16, 2016, Cigna upheld its prior decision on rate of payment for the 2016 Procedure based on the Maximum Reimbursable Charge.

21.    By letter dated April 11, 2019, Cigna upheld its prior decision on rate of payment for the 2018 Procedure based on the Maximum Reimbursable Charge.

22.    By letter dated January 12, 2018, SCV, *via* undersigned counsel, asked Defendant to provide germane data required by, for examples, Florida Statutes and / or the insurance contract for the 2016 Procedure.[4]

23.    By letter dated June 12, 2018, SCV, *via* undersigned counsel, asked Defendant to provide germane data required by, for examples, Florida Statutes and / or the insurance contract for the 2018 Procedure.[5]

---

[4] A copy of the letter is attached at **Exhibit C**.

[5] A copy of the letter is attached at **Exhibit D**.

24.     As to records production, the insurance contract (Ex. A) provides, in pertinent part, as follows:

> [following an adverse benefits determination, one is entitled to receive] upon request and free of charge, a copy of any internal rule, guideline, protocol or other similar criterion that was relied upon in making the adverse determination regarding your claim; and an explanation of the scientific or clinical judgment for a determination that is based on a Medical Necessity, experimental treatment or other similar exclusion or limit.

Ex. A at 58; *see also id.* at 66 (same with respect to an adverse appeal decision).

25.     Defendant did not send any of the information / documentation requested in the January 12, 2018, and June 12, 2018, letters.

26.     At all material times, the Plan was in full force and effect and the insurance policy (Ex. A) was a legally valid and binding contract.

27.     At all material times, the PMCS allowed amount / re-pricing contract (Ex. B) was in full force and effect and was a legally valid and binding contract.

28.     According to the PMCS agreement, Cigna, in a re-pricing / UCR exercise, should have used the contracted 80% rate to calculate the allowed amount equaling at least $128,673.60 relative to the 2016 Procedure, and $228,282.40 relative to the 2018 Procedure.[6] Taking into account the amounts previously paid by Defendant (which such prior payments presumably already took patient responsibilities subject to out-of-pocket annual maximum into consideration), this leaves outstanding amounts of $115,839.06 in relation to 2016 Procedure and $184,060.99 in relation to the 2018 Procedure for J.R.'s claims.[7]   These amounts are

---

[6] These amounts do not include adjustments (under a PMCS re-pricing exercise) for implants / prosthetics, which would be reimbursed at 100%; *i.e.*, which are not subject to re-pricing discounts.

[7] The outstanding amount / balance owed may be higher depending on what discovery (and the long-overdue requested records) reveals.

exclusive of attorneys' fees, costs, interest, and / or extra-contractual exposure.

29.    SCV has suffered significant financial harm no matter how one slices this situation. The financial harm by way of owed health insurance benefits / medical services monies is in excess of $75,000.00 (not including attorneys' fees, costs, or interest), if the negotiated 80% rate prescribed by Cigna's third-party re-pricing vendor PMCS is honored / enforced as it should be, or even if rates comporting with the Plan were to be utilized in the allowed amount / re-pricing assessment, or even if rates established by Florida's publicly available AHCA database were to be utilized in a UCR re-pricing assessment.[8]

30.    SCV exhausted the pre-suit appeals process in an effort to accomplish Defendant's doing the right thing (*i.e.*, compensating SCV proper amounts for the medical services provided to J.R.) sans litigation, to no avail. Hence, this lawsuit as SCV's last resort.

### COUNT I – BREACH OF CONTRACT (REGARDING THE 2016 AND 2018 PROCEDURES, AS TO RECORDS PRODUCTION FAILURE)

SCV re-alleges Paragraphs 1-7, 18, 22-26, and 30, as if fully set forth herein, and further alleges as follows:

31.    At all material times to this action and in exchange for a valuable premium, Cigna provided health insurance to J.R. under the insurance policy, which is a binding and enforceable insurance contract under the laws of the State of Florida.

32.    The insurance contract required Defendant's production of the germane documentation / information requested by SCV.  *See* ¶¶ 22-24 and Exs. A, C, and D.

33.    SCV and its legal counsel were entitled to (and needed … still need, actually)

---

[8]    *See,    e.g.,*    http://www.floridahealthfinder.gov/LandingPages/HospitalASC.aspx    and http://www.floridahealthfinder.gov/CompareCare/SelectChoice.aspx.

the germane documentation requested of Cigna, mainly (but not entirely) to learn Defendant's reasons for the subject underpayments / failures to pay, so SCV could contest same in an educated fashion and facilitate a proper amount of payment (ideally pre-suit during the appeals processes, although that ship regrettably sailed).

34.    Defendant breached the insurance contract by refusing the germane documentation / information requested by SCV and promised by the contract, compromising the entire pre-suit process for SCV, SCV's (related) ability to recover proper amounts of monies owed under the insurance contract, and *et cetera*.

35.    As a direct, foreseeable, and proximate result of Defendant's breach of its obligations under the insurance contract, SCV has suffered and continues to suffer damages.

36.    SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's improper withholding of germane documentation / information owed to SCV under the subject insurance contract.

37.    As a further result of Defendant's refusal to furnish germane documentation / information owed under the insurance contract, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, respectfully requests (a) an order compelling Defendant, Cigna Health and Life Insurance Company, to produce the outstanding germane records posthaste and allowing SCV thirty days following production of the records to amend this Complaint again, if need be, and (b) the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages

including, but not limited to, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT II – BREACH OF CONTRACT (REGARDING THE 2016 PROCEDURE, AS TO CLAIM UNDERPAYMENT)

SCV re-alleges Paragraphs 1-9, 11, 13-16, 18-20, 22, and 24-30 as if fully set forth herein, and further alleges as follows:

38.    At all material times to this action and in exchange for a valuable premium, Defendant provided health insurance to J.R. under the insurance policy, which such insurance policy is a binding and enforceable insurance contract under the laws of the State of Florida. And the governing PMCS contract (Ex. B) is a binding and enforceable contract under the laws of the State of Florida.

39.    The subject medical services were covered under the insurance policy, as evidenced by Defendant's partial payment of insurance benefits / medical services monies to SCV relating to the medical services it furnished to J.R. The subject SCV bill should have been paid out pursuant to the re-pricing rates (80% of all non- implant / prosthetic HCFA line-items and 100% of any implant / prosthetic HCFA line-items because implants / prosthetics are hard costs not subject to a re-pricing discount) prescribed by the governing PMCS contract (again, with PMCS being Cigna's agent and a "database" under the insurance policy's definition of "Maximum Reimbursable Charge") at the very least and / or publicly available databases assessing the rates of similarly-situated medical providers in like Florida geographies (*e.g.*, AHCA's publicly available databases) and / or the insurance policy in the at minimum alternatives. Defendant erred in deciding to not fully compensate SCV; *i.e.*, in tendering a

$12,885.36 payment in relation to $160,842.00 in billed charges.

40.     By the terms of the insurance policy and plainly by the terms of the governing PMCS contract (and pursuant to Florida law regardless), Defendant had a duty to, among other things, properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and fully compensate SCV in relation to same.

41.     Defendant failed SCV in these regards (most notably with respect to its failure to pay SCV a proper amount of benefits / medical services monies), which breached the insurance policy, certainly breached the governing PMCS contract, and / or violated Florida law.

42.     As a direct, foreseeable, and proximate result of Defendant's breaches of its obligations under the governing PMCS contract and its obligations under the insurance policy, SCV has suffered and continues to suffer damages.

43.     SCV has no adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject health insurance benefits.

44.     As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action,

and for such other relief as this Court deems equitable, just and proper.

## COUNT III – UNJUST ENRICHMENT (REGARDING THE 2016 PROCEDURE)

SCV re-alleges Paragraphs 1-9, 11, 13-16, 18-20, 22, and 24-30 as if fully set forth herein, and further alleges as follows:

45.     SCV conferred a direct benefit upon Defendant by providing Defendant's insured / member (J.R.) with medical services to which J.R. was entitled under the insurance policy as evidenced by the partial compensation tendered to SCV by Defendant in relation to same. Examples of "conferral of benefit" would include the following, for examples, which are posed as questions: (a) What about Defendant receiving the benefit when its policyholder received care and treatment offering Defendant's insurance policy as their primary method of payment? (b) What about the good health of J.R. conferred on Defendant? Was it not of benefit to Defendant that SCV minimized (if not entirely eliminated) J.R.'s future medical expense (and insurance claims to Defendant) relating to the subject conditions such as prolonged alternative treatments or a return for more (and perhaps more complex) surgery due to complications arising out of some other inferior treatment regimen? The list goes on.

46.     Defendant voluntarily accepted and received the benefit conferred by SCV, with the knowledge that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, and reasonable ("UCR") charges as prescribed by reasonable, unbiased re-pricing vendors (*e.g.*, PMCS) or, for that matter, as prescribed by Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography or as prescribed by the insurance policy in the at minimum alternatives.

47.     Defendant has not paid the proper value of the benefit conferred by SCV in

that Defendant has significantly underpaid SCV's claim for the medical services provided to J.R.

48.    Defendant's underpayment results in a windfall for Defendant in that, for examples, (a) Defendant collects premiums in return for agreeing to properly compensate providers, like SCV, who render covered medical services, and / or (b) Defendant enjoys an unearned profit in relation to the insurance benefits themselves, in relation to interest that has accrued on the wrongly withheld benefits, in relation to investment returns enjoyed through the monies wrongly withheld from SCV, in relation to level-funded plan profits enjoyed through the wrongly withheld monies, and / or *et cetera*.

49.    It is unjust under the circumstances for Defendant to underpay SCV's claim.

50.    SCV has no adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject medical services monies.

51.    As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, past-due medical services moneys, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT IV – *QUANTUM MERUIT* (REGARDING THE 2016 PROCEDURE)

SCV re-alleges Paragraphs 1-9, 11, 13-16, 18-20, 22, and 24-30 as if fully set forth herein, and further alleges as follows

52.    SCV conferred a direct benefit upon Defendant providing Defendant's insured / member (J.R.) with medical services to which J.R. was entitled under the insurance policy as evidenced by the partial compensation tendered to SCV by Defendant in relation to same. Examples of "conferral of benefit" (in the form of questions) are discussed in Paragraph 45, *supra*, and incorporated into this count by reference.

53.    SCV billed Defendant UCR charges for the services as prescribed by reasonable, unbiased re-pricing vendors (*e.g.*, PMCS) or, for that matter, as prescribed by Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography or as prescribed by the insurance policy in the at minimum alternatives.

54.    Defendant received the bill from SCV but underpaid SCV for the services.

55.    A contract implied-in-fact was doubtless established through Defendant's knowledge that services were being rendered and both sides intended for compensation to be paid, with the parties possessing the compensation intention through the course of their past dealings or otherwise.

56.    In order for the implied-in-fact contract to have been formed, Defendant did not have to be the recipient of the services or request the services.

57.    SCV is entitled to reasonable compensation for the services (*i.e.*, quantum meruit), which is by no means accomplished by the unsubstantiated claim underpayment but

is reflected in the SCV rate assessments of reasonable, unbiased sources such as re-pricing vendors (*e.g.*, PMCS) or in Florida's publicly available AHCA databases. And determination of the proper amount of compensation is a question of fact reserved for a jury.

58.    The circumstances are such that it would be inequitable for Defendant to retain the benefit of the subject medical services without paying SCV the proper value for same.

59.    SCV has no adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject medical services monies.

60.    As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, past-due medical services monies, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT V – BREACH OF CONTRACT (REGARDING THE 2018 PROCEDURE, AS TO CLAIM UNDERPAYMENT)

SCV re-alleges Paragraphs 1-8, 10, 12-15, 17-19, 21, 23-30 as if fully set forth herein, and further alleges as follows:

61.    At all material times to this action and in exchange for a valuable premium, Defendant provided health insurance to J.R. under the insurance policy, which such insurance policy is a binding and enforceable insurance contract under the laws of the State of Florida.

And the governing PMCS contract (Ex. B) is a binding and enforceable contract under the laws of the State of Florida.

62.    The subject medical services were covered under the insurance policy, as evidenced by Defendant's partial payment of medical services monies to SCV relating to the medical services it furnished to J.R. The subject SCV bill should have been paid out pursuant to the re-pricing rates (80% of all non- implant / prosthetic HCFA line-items and 100% of any implant / prosthetic HCFA line-items because implants / prosthetics are hard costs not subject to a re-pricing discount) prescribed by the governing PMCS contract (again, with PMCS being Cigna's agent and a "database" under the insurance policy's definition of "Maximum Reimbursable Charge") at the very least and / or publicly available databases assessing the rates of similarly-situated medical providers in like Florida geographies (*e.g.*, AHCA's publicly available databases) and / or the insurance policy in the at minimum alternatives. Defendant erred in deciding to not fully compensate SCV; *i.e.*, in tendering a $44,221.41 payment in relation to $285,353.00 in billed charges.

63.    By the terms of the insurance policy and plainly by the terms of the governing PMCS contract (and pursuant to Florida law regardless), Defendant had a duty to, among other things, properly investigate the subject medical services, adjust / investigate the subject SCV claim relating to such services, and fully compensate SCV in relation to same.

64.    Defendant failed SCV in these regards (most notably with respect to its failure to pay SCV a proper amount of medical services monies), which breached the insurance policy, certainly breached the governing PMCS contract, and / or violated Florida law.

65.    As a direct, foreseeable, and proximate result of Defendant's breaches of its

obligations under the governing PMCS contract and its obligations under the insurance policy, SCV has suffered and continues to suffer damages.

66.     SCV has no adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject medical services monies.

67.     As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT VI – UNJUST ENRICHMENT (REGARDING THE 2018 PROCEDURE)

SCV re-alleges Paragraphs 1-8, 10, 12-15, 17-19, 21, 23-30 as if fully set forth herein, and further alleges as follows:

68.     SCV conferred a direct benefit upon Defendant by providing Defendant's insured / member (J.R.) with medical services to which J.R. was entitled under the insurance policy as evidenced by the partial compensation tendered to SCV by Defendant in relation to same. Examples of "conferral of benefit" would include the following, for examples, which are posed as questions: (a) What about Defendant receiving the benefit when its policyholder received care and treatment offering Defendant's insurance policy as their primary method of

payment? (b) What about the good health of J.R. conferred on Defendant? Was it not of benefit to Defendant that SCV minimized (if not entirely eliminated) J.R.'s future medical expense (and insurance claims to Defendant) relating to the subject conditions such as prolonged alternative treatments or a return for more (and perhaps more complex) surgery due to complications arising out of some other inferior treatment regimen? The list goes on.

69.     Defendant voluntarily accepted and received the benefit conferred by SCV, with the knowledge that SCV expected to be paid the reasonable value of its services; *i.e.*, SCV's usual, customary, and reasonable ("UCR") charges as prescribed by reasonable, unbiased re-pricing vendors (*e.g.*, PMCS) or, for that matter, as prescribed by Florida's publicly available AHCA database assessing rates of various medical providers of like kind within like geography or as prescribed by the insurance policy in the at minimum alternatives.

70.     Defendant has not paid the proper value of the benefit conferred by SCV in that Defendant has significantly underpaid SCV's claim for the medical services provided to J.R.

71.     Defendant's underpayment results in a windfall for Defendant in that, for examples, (a) Defendant collects premiums in return for agreeing to properly compensate providers, like SCV, who render covered medical services, and / or (b) Defendant enjoys an unearned profit in relation to the insurance benefits themselves, in relation to interest that has accrued on the wrongly withheld benefits, in relation to investment returns enjoyed through the monies wrongly withheld from SCV, in relation to level-funded plan profits enjoyed through the wrongly withheld monies, and / or *et cetera*.

72.     It is unjust under the circumstances for Defendant to underpay SCV's claim.

73.     SCV has no adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the medical services monies.

74.     As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, past-due medical services monies, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT VII – *QUANTUM MERUIT* (REGARDING THE 2018 PROCEDURE)

SCV re-alleges Paragraphs 1-8, 10, 12-15, 17-19, 21, 23-30 as if fully set forth herein, and further alleges as follows:

75.     SCV conferred a direct benefit upon Defendant by providing Defendant's insured / member (J.R.) with medical services to which J.R. was entitled under the insurance policy as evidenced by the partial compensation tendered to SCV by Defendant in relation to same. Examples of "conferral of benefit" (in the form of questions) are discussed in Paragraph 68, *supra*, and incorporated into this count by reference.

76.     SCV billed Defendant UCR charges for the services as prescribed by reasonable, unbiased re-pricing vendors (*e.g.*, PMCS) or, for that matter, as prescribed by Florida's publicly available AHCA database assessing rates of various medical providers of

like kind within like geography or as prescribed by the insurance policy in the at minimum alternatives.

77.    Defendant received the bill from SCV but underpaid SCV for the services.

78.    A contract implied-in-fact was doubtless established through Defendant's knowledge that services were being rendered and both sides intended for compensation to be paid, with the parties possessing the compensation intention through the course of their past dealings or otherwise.

79.    In order for the implied-in-fact contract to have been formed, Defendant did not have to be the recipient of the services or request the services.

80.    SCV is entitled to reasonable compensation for the services (*i.e.*, quantum meruit), which is by no means accomplished by the unsubstantiated claim underpayment but is reflected in the SCV rate assessments of reasonable, unbiased sources such as re-pricing vendors (*e.g.*, PMCS) or in Florida's publicly available AHCA databases. And determination of the proper amount of compensation is a question of fact reserved for a jury.

81.    The circumstances are such that it would be inequitable for Defendant to retain the benefit of the subject medical services without paying SCV the proper value for same.

82.    SCV has no adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject medical services monies.

83.    As a further result of Defendant's refusal to fully compensate SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, past-due medical services monies, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## COUNT VIII – VIOLATION OF SECTION 627.64194 OF THE FLORIDA STATUTES (REGARDING THE 2018 PROCEDURE)

SCV re-alleges Paragraphs 1-8, 10, 12-15, 17-19, 21, 23-30 as if fully set forth herein, and further alleges as follows:

84.    Cigna is an insurer governed by Chapter 627 of the Florida Statutes.

85.    SCV provided nonemergency services to J.R. The services are covered services pursuant to Section 627.64194 of the Florida Statutes.

86.    SCV billed Cigna, specifying the nature of the services in its claim submission package and usual, customary, and reasonable charges for such services. The billed charges represent the fair market value of the services rendered.

87.    Cigna rendered a claim decision that grossly underpaid SCV for the services rendered to J.R.

88.    Cigna is required, pursuant to Sections 627.64194(4) and 627.64194(5) of the Florida Statutes (both of which *via* Section 627.64194(4) refer to Section 641.513(5) in the following regard), to indemnify SCV for the subject medical services in an amount equal to the lesser of:  (a) SCV's charges, (b) the usual and customary provider charges for similar services in the community where SCV provides services, or (c) the charge mutually agreed to by SCV and Cigna within sixty days of SCV's claim submission.

89.     Cigna's claim underpayment decision fails to satisfy Sections 627.64194(4) and 627.64194(5).

90.     Defendant has failed to comply with Section 627.64194 of the Florida Statutes by underpaying SCV for the subject medical services.

91.     SCV has no other adequate remedy other than this lawsuit to address the injuries it has suffered as a result of Defendant's underpayment of the subject medical services monies.

92.     As a further result of Defendant's refusal to fully indemnify SCV, SCV has been forced to retain legal counsel to represent it in this matter and is accordingly entitled to recover its reasonable attorneys' fees and costs pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable.

WHEREFORE, Plaintiff, Surgery Center of Viera, LLC, requests the entry of judgment against Defendant, Cigna Health and Life Insurance Company, for liability and for damages including, but not limited to, past-due medical services monies, attorneys' fees pursuant to Section 627.428 of the Florida Statutes or as otherwise awardable, costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.

## JURY DEMAND

93.     Plaintiff, Surgery Center of Viera, LLC, demands a trial by jury on all issues so triable as a matter of right.

Dated this 6th day of April, 2020.

Respectfully Submitted,

**CALLAGY LAW, P.C.**

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Florida Bar No. 41103
1900 N.W. Corporate Blvd., Ste 310W
Boca Raton, Florida  33431
(561) 405-7966 (o); (201) 549-8753 (f)
jgreyber@callagylaw.com
hcasebolt@callagylaw.com
*Attorney for Plaintiff*